Next case is ALCOHOL MONITORING systems v. ACTSOFT, et al. 2010 1250. We'll hear from Mr. Martin once you get settled. Good morning, Your Honor. May it please the Court, Michael Martin, Lathrop and Gage on behalf of the plaintiff appellant, ALCOHOL MONITORING systems. With respect to Step C of Claim 14 of the 919 patent, defendants have changed their claim construction from that which they originally urged upon and was adopted by the trial court. Was the claim construction of the court wrong? Yes, it was, Your Honor. This wasn't calculation of blood, alcohol measurement all over this patent? Your Honor, calculation appears as part of the preferred embodiment, but in terms of measuring the percentage of alcohol expelled through the skin into the measurement device, a calculation was not a requisite step in Claim 14. In fact, isn't it actually physically impossible to measure the percentage of blood alcohol based on TAC? And that's the point, Your Honor, and that's why this claim construction was wrong, and I believe why the defendants are backing away from it. It's just an approximation at best. Before this court, it's an indication. It's monitoring. It's an approximation. You cannot physically, scientifically measure blood alcohol. So isn't when the district court is talking about BAC, he's talking about TAC. Isn't it just harmless error of the language? I mean, there was a lot of discussion to the judge about the fact that it's impossible to measure blood alcohol content transdermally. I don't think it was harmless error, Your Honor, for this reason. He's not a dumb guy. No, no, he's certainly not. He knows that you're not actually measuring blood alcohol content. This whole concept of transdermal testing is to arrive, if you wish, in a preferred embodiment at TAC. I'm not suggesting that, but I don't think that's harmless error, because what that led him to do, Your Honor, is to import a limitation. I understand that. If he had said TAC, if he'd said the whole idea here is to measure TAC instead of BAC, he still would have imported the limitation. TAC embodiment, which is your preferred embodiment. Let me ask a question about your preferred claim construction. As I understand it, you say a percentage of alcohol expelled is the amount of alcohol, the denominator of the fraction, if you will, is all the alcohol my body's emitting at the moment. And the numerator is that portion that's at the test board, right? Yes, Your Honor. I think that that's the only way that this claim… If that's so, how can you make claims 19 and 21 make any sense, the dependent claims? Because what they're talking about there is the result. Let's look at them closely. If a change in said percentage… Now, that percentage was a fraction, which is all the alcohol I'm emitting on the bottom of the fraction on the top, the amount that's at the sensor, right? So, if there's a change in that percentage, right? How do you determine a change in that percentage? Maybe I gained weight. I had more surface area. I believe what is… You make the test site bigger. Well, no, what the change is referring to is the measurement. You can't have a change without a measurement. Well, what may… But then you're in essence saying if the change in the current that you see in the sensor… I understand that. It's the change in the level of the alcohol in the sample. Measure, yeah, and that's affecting the current, right? But that's not the language of 19 and 21. Well, but it refers to the change. So, the change has to incorporate something. If a change in the percentage of alcohol, not a change in the proportion or in the fraction of alcohol to air that's in the sensor. But it's necessarily implied that there is a measurement result because if you're talking about… Would you agree at least that there is a little bit of tension in trying to fit your definition of percent of alcohol into 19 and 21? I would agree with that, sure. It's awkward. Why isn't the definition just TAC? Measuring a percentage of alcohol expelled through the subject's skin. I mean, I just don't… I can't… It screams TAC. Why isn't element C measuring TAC? Because there is no calculation requirement. If you go back to the… Measuring a percentage. Why isn't that? I find your suggested claim construction to be generous, curious, and strange. I think that the language is quite clear. TAC. Because, Your Honor, if we could look at it perhaps as a mathematical function. You can still maybe get TOE infringement. You're out for literal. We'd have to affirm literal. But you still got a shot. Voltage could be equivalent to TAC. Why not adopt a far more reasonable construction that actually makes sense? Because, Your Honor, if grammatically what we're talking about really I think is a mathematical… It's like a mathematical formula. You measure and you group together everything that you're measuring. You put the parentheses around everything that you're measuring. The function that's being applied. Look, I have no idea what you're saying right now. Okay, if you have… You group together everything that you're measuring. Group together? What are you talking about? Measuring a percentage of alcohol expelled? Expelled through the skin. That is what you're measuring. Measuring a sample. What? Measuring a sample. Measuring defines what you're measuring. A percentage of alcohol that is expelled through the skin. Otherwise, if you're… Why isn't that TAC? If that's TAC, then you'd have to have a… There would have to be some type of calculation. Your measurement is performed in essence in your sensor column six at the bottom, right? Yes, Your Honor. So, what you're basically saying is what you are… We ought to read the claim to say what the limitation in C is measuring something. Yeah, and that's… So, it's measuring amount, a proportion of alcohol that you're going to find someplace. And where you find it, it goes in the sensor. When it goes in the sensor, the sensor which you buy over in Germany at Dagger Work, right? From Lubeck. Right. You know exactly what to buy. And you know that when the gas comes off the skin and goes into the sensor, there's some alcohol in there, right? Yes, sir. Just ethanol. And there's something else. And that… The proportion of the alcohol to whatever else is in there creates an electrical charge. Yes, sir. And the electrical charge gets bigger the more alcohol is in there. And the electrical charge gets smaller the less alcohol, right? Yes, sir. And I think what you're saying is that the claim, as you read Step C, what Step C is doing is in taking a sample, whether it's larger or bigger, taking a sample and running it through the sensor. Yes, sir. And I think that's… And if you want to go on and anybody… Everybody knows once you have the electrical current, right? You know the size of the current. If you're smart enough to have a table someplace, you can go run a calculation. Yes. It's an easy conversion. But if all you're trying to do, if the court order says, Clevenger, do not consume alcohol, right? They don't care how much. They say, don't consume alcohol. And you strap the device on me that's got a baseline of zero somewhere. If I consume alcohol, I create an electrical charge. And it identifies a drinking event, which is important. And it says, come out and grab me or do whatever. That's the requirement. I suppose if a court order wanted to know what is the approximate blood alcohol content in Clevenger's body all during the time that he's in custody or whatnot, then you can throw your TAC formulation on him, right? I think that's right. And you, in essence, I think as I understood it, you in essence made that kind of a claim construction argument in your brief on claim construction. I'm talking about what's at the record in A954, if you've got it there. At A9, it's at page 23 of what I got off of Pacer here. I think that's right. If you look at 9, it's a reference to Mr. Hoffman. You were objecting to the claim construction that defendants were trying to get onto the court, which was back or TAC, however you want to call it. And you said that using, you objected to that. And you said using the ordinary customary means, or step C, means ascertaining the proportion of alcohol expelled. And then you go on and say, specifically, author and testified on sensor. Yes, sir. And I think that that's borne out of specifications in the summary of the invention. If you look at column three, lines 23 through 31, it says the system provides for the continuous monitoring of a subject's blood alcohol level by measuring the level of ethanol that has been expelled through the subject's skin. The system determines the subject's blood alcohol level by measuring the amount of ethanol at a predetermined distance away from the subject's skin, which provides an indication of the relative amount of ethanol. But your claim doesn't say measuring alcohol expelled through the subject's skin. It says measuring a percentage. So why aren't you bound to be measuring a percentage? Your Honor, our claim construction is that we are measuring a percentage of the alcohol expelled through the skin. It makes no sense. Your claim construction focuses on the size of the patch, right? If the patch is small or large, the percentage is going to change. If the individual has a measurement and then gains weight, the percentage is going to change. And in fact, you never measure the percentage because you never take account for how large the human being is vis-a-vis the size of the patch. So you don't actually measure a percentage at all. We measure a percentage of the total alcohol that's expelled from the subject. No, you don't because you don't know how much alcohol is expelled from the entire body. So you're not measuring a percentage. The testimony or the evidence that was introduced before the trial court. It's completely not quantifiable. Well, the evidence that was introduced before the trial court was, and this is at the appendix page 2143, was that approximately 3% to 5% of all alcohol consumed is eliminated transdermally, and that the system measures about 5% of that. Might the invention consist of monitoring blood alcohol content without calculating it? In other words, you're determining the amount that's coming out transdermally, and you can compare it with other amounts coming out transdermally, but you never have to calculate the BAC. You can just compare. That is essentially our argument in a nutshell, Your Honor, that you monitor blood alcohol by the current from the fuel cell, which if you look at column six, lines 59 through 61 of the patent, states that the output of the fuel cell is an electrical current which is proportional to the amount of alcohol present in the air within the sample. Well, without measuring an actual percentage, then claims 19 and 21, as Judge Clevenger pointed out, can't be performed. If I adopt your claim construction and don't actually measure a percentage, there's no way for me to determine a change in that percentage. I agree there's a tension between claim 14 and claim 19 and 21. The only way you can determine the change is through a measurement. But if we adopt the interpretation that is advocated by others, that C is equal to TAC, measuring a percentage of alcohol expelled through the skin, which is sort of the quintessential definition of TAC, then claim 19 and 21 are in complete harmony and everything works in this patent. Well, if you talk about the measurement result, claim 19 and 21, the change, because you have to talk about the measurement result being the change, and I think they are in harmony. Well, if you take an intermediate ground, the notion that step C requires calculation of TAC is the position of your adversary, a position you'll say the judge adopted. Your going in position is that the percent is simply this amount, percent of alcohol, the whole body, and that creates claim 19 and 21 problems, which you've been candid about. If you look at claim 1, which is the, you know, portable, the alcohol measuring means tell you how to do it. Why isn't claim C more properly interpreted to, in essence, embrace the sensor that we find down there in the bottom of column 6? To say what you're talking about, measuring a percent of alcohol expelled is what you're doing is you're making that calculation of that electrical charge, and that's a fraction. Amount of alcohol in the sensor, it's ethanol compared to whatever else is in there, produces a fraction, produces a charge. Yes. Well, why isn't that the correct interpretation of measuring a percentage? You're looking, again, Your Honor. I'm looking, I'm just, in essence, step C is basically talking about what goes on from line 48 on down in column 6. This is your sensor. The sensor is creating a proportion. A proportion is a fraction. It's a percentage. This is Mr. Hawthorne, right? Yes, sir. Why isn't the correct way of looking at the C limitation is to say you are measuring a percentage of alcohol expelled that's all happening in the sensor, right? Yes, sir. And the percentage of alcohol expelled is the proportion. And that proportion would be equivalent. The proportion of ethanol in the sensor to the other gases. And that proportion would be then equivalent. Right. And that proportion can increase or decrease. Looking at the claim that way doesn't create a claim 1921 problem. I agree with that, Your Honor. Why didn't you say that in the beginning? Your Honor, there's a tension. There is a tension. This is just the purity of the language, the notion that the patent lawyer can't see the language Does that seem to me anything other than the percent of alcohol compared to all the alcohol I'm admitted? Well, because I think that the way the district court construed this, the percentage, the term percentage, was always the way the district court construed this was a blood alcohol content. And that clearly, to denote a blood alcohol content, that clearly wasn't, first of all, it wasn't possible. And it's not supported by the terms of the patent. I'm probably trying to go climb up a flagpole there. I mean, it seems to me that, I mean, I think that you just insert TAC where the district court said back. And if we said it back to say, well, didn't you really mean TAC instead of back, he's going to write it in TAC. He'll be right back up here again. So it would seem to me, I mean, are you, are you standing pat on your interpretation of what a percentage of alcohol is? Well, my I mean, what about your, what you presented to the district court judge on the, on the claim construction when you were relying basically on Mr. Hawthorne to say that SEC step C is really the central. And that's all we're saying. Step C. And I think that that's the way you are measuring something and step. And that's all we're really saying. And I think in that, in that regard, those positions can be reconciled because it is all we're saying is the level of alcohol that's expelled into the sample. That's not what the district court said. No, the district court in essence read the preferred embodiment on top of that to say, I mean, aren't I correct in thinking that once you know that you can ascertain the electrical charge and you know, basically whatever that voltage number is, you can then go to some smart person who figured out a table somewhere. It's very easy. And you'll say, here's your TAC. And then you'll say to the judge, TAC isn't back, but everybody just like a breathalyzer test that the cop gives you on the street is not blood alcohol content, but it correlates. Blood alcohol, you can equate with breath alcohol. You can equate with blood alcohol. TAC you can't, but it's an easy, it's a very easy mathematical calculation. It was well known in the prior art. I think if you look at page 13, defendant's brief. So if you, if you have a device in the marketplace, that is simply going to measure the voltage. So you have a proportional indication of how much drinking has been going on if, or increase or decrease. And if the D if the increase is too big, you throw it out because you say something else was in there. If you want to go on to calculate TAC, that makes it a more expensive device. You have to put more software or something into it. Oh, I don't, it can be done manually. Okay. It can be done manually. And that's the Giles reference. Martin, you're well over your time. Thank you. We've asked a lot of questions. We'll give you three minutes of rebuttal. Thank you, your honors. May it please the court with me today is Nicholas Jingo. I would like to start by saying that, that I think the courts highlighted this and that is the specification is a little bit all over the place in terms of what it's doing. It talks about measuring, monitoring, testing, talks about blood alcohol content of course is used, you know, 45, 50 times in the patent. The phrase transdermal alcohol never appears in the patent at all. It's not a well drafted patent or at least claims. Which I think is why the testimony of the two experts in this case is particularly useful. Certainly as in Phillips, the courts noted that the expert testimony needs to be reviewed carefully because of issues with it. But in this case, both of the experts are plaintiff's own witnesses. Yeah. And they were in essence saying, once you got the voltage, you got tack, you got back. That's actually not what they were saying. They were saying that if you knew the voltage and you knew some other things, you could go from a voltage to attack. There is a formula. You can use a lookup table. There are different ways of doing it, but that the voltage itself is not. Right. That a voltage itself though is not attack. But the voltage tells you a proportion, whether there is more or less alcohol being consumed. And that's the reason why your client's device is in the marketplace, right? Well, you strap it on somebody and they, they start off at a baseline of zilch and they, they drink a half bottle of Jack Daniels and the voltage goes crazy. But I think if you're looking at step C, if you're given a voltage from the device, it doesn't tell you anything about a person's blood alcohol level. It tells you proportionally whether it's going up or going down. Well, if you perform step C over and over and over again, and you plot out all the results, you can see that the voltage has gone up or down, but you don't know that that's from drinking. Temperature affects a sensor output. It just says measuring, right? What says measuring a percentage of alcohol and you have both Zettel and Hawthorne. Well, Zettel who was there. Percentage of alcohol where? Being emitted. In the sample. Right. Which is. Not necessarily in the blood. Well, percentage of alcohol. We asked their infringement and claim construction expert, Mr. Zettel, who had 30 some years of experience, what the phrase percentage of alcohol meant to him. And he said, it means blood alcohol content, BAC. He says that in his deposition. He says it again at the market. Expelled through the skin. Percentage of alcohol in a vacuum might make people think back, but not when it's followed by expelled through the skin. I don't agree. Through the skin is tack. You can't measure alcohol expelled through the skin and have a pure measurement of back. Well, I guess if you're going to add the word pure measurement of back. I have an approximation, but it's not a minute. But, but if you look at, if you look at Mr. Hawthorne's testimony, tack is, is defined to be, although you say in an approximation, he was asked, um, he was asked, for example, what would a tack of 0.08 tell you? And he said approximately a 0.08 BAC. Approximately. Approximately. But I don't think the court's claim construction somehow excludes the approximately language. The court's claim construction says it has to measure back. And this can't do that. Well, I think it can, because I can approximate it, but I can't measure it. Well, I can measure it. The court's claim construction is wrong because it didn't say approximate. It said measure. Well, I, okay. I think if you want to include the word approximate, I don't think it changes the result, but it's still just a measurement of. Tack is an approximation of back, but the court really tack is just tack.  Well, I guess I would say though, in this case, it doesn't make any material difference to the outcome. Well, but it does because if this is met, if measuring a percentage of alcohol expelled through the subject skin is tack, yes, then literal infringement would have to be affirmed. But what about DOE? They could argue the voltage is potentially equivalent. And measuring voltage gives you a potential equivalent to measuring tack. Well, so we'd have to vacate and remand on the summary judgment of Dr. I don't think so. Because again, when you look at the testimony on the doctrine of equivalence, all they would say is that if you didn't have these other characteristics, these other factors, like a conversion factor or something else, the voltage doesn't tell you anything. That was Mr. Hawthorne's testimony. Both voltage and tack approximate back. So why couldn't those two things be equivalent? Because if you have a voltage number, you don't, you don't know what the tack is. You don't have any idea what the approximate BAC number is or what the TAC number is. How do you figure out what tack is? You just ignore voltage, right? No, no. Voltage is an input. I mean, I think in our brief, we used the analogy. No, it's the primary input that then you then massage that number, right? Well, it's, it's an, and input that you need. And I don't know that massage, but you definitely need other information. Like what? Well, you need either the formula, which Mr. Hawthorne testified to where you need a conversion factor that tells you when essentially, when you get a point. That's just a formula. That's just a formula. It's like me converting your height from feet to meters. No, I mean, how is, how is that somehow some substantial difference? I don't think so. Because you, you, in that case, there's only one variable and there's a fixed ratio of, I mean, there's a universal definition of a, you know, meters to feet or Celsius to Fahrenheit. Well, what are the other variables in this formula? This conversion factor, every sensor is different. A one, Mr. Hawthorne testified, for example, that the conversion factor for every, every sensor would be different. So a 1.8 from one sensor is not the same. You'd have to have a different table. So you have four sensors, four tables. Right. If you were doing the table. This sounds like a lot of fact stuff that would go to a jury for DOE. Except that we don't have a table and they admit that we don't have a table. We don't use this formula that Mr. Hawthorne testified about. That was undisputed. Well, you take voltage and somehow. And that's it. What do you do with the voltage? Don't you, you take the voltage in order to make a determination of whether the subject has alcohol in their body or is expelling alcohol. We take the voltage and report it. If, if the percentage we're talking about here, which seems to me to be the cut line. The trial judge said, well, when you use the word percentage, you've got to do a calculation. You've got to be, you know, a fraction someplace. That's what I just understand to be the case. So assume for purposes of argument, I agree with the district court judge. You use this word percentage. There's got to be a proportional. Determination somewhere. And your argument that the district court judge bought was that that proportional. Calculation is tacked. I forget about the difference between tag and back. Yes. And your adversary is saying, no, no, no. That's the preferred embodiment. Claim C is basically the proportion you're looking for. The percent of. Of alcohol you're looking for is. What's in the sensor. That's that's a. At column six at the bottom, the German fancy German sensor. Because that sensor does make a proportional determination. The sensor measures the amount of ethanol. It makes a fraction. No, it just creates an, it creates an electrical output, which is proportional. So it's proportional. The larger the numerator, the larger the chart. The size of the gas sample. In the sensor remains the same. The more that the. Ethanol comes in your proportionality, your percentage, if you will, now call coming out the back in the form of the electrical charge is there. So it seems to me. What's in front of the court is whether the correct interpretation of the percentage is, as I just said, with regard to the sensor or whether it's with regard to the final calculation of tack. Those seem to me to be the choices. And so I would think you have to explain to us why of what I'll call the column. 6. Percent is incorrect. Well, column six doesn't say it's a percentage. It just says you're taking the amount. For example, and I would refer to Mr. Hawthorne. Mr. Hawthorne's testimony is proportional to the amount of alcohol present. Well, just like to use the analogy we used in our brief, the radius of a cylinder is proportional to the volume of the cylinder, but knowing the radius doesn't indicate or tell you what the volume is. It's an input. There is a relationship between them. I guess the undisputed fact is that we don't know it. The way in which the sensor operates, isn't the sensor actually looking at the percentage of alcohol that's in the sample? The percentage is getting bigger or getting smaller as the current is proportional. I'm not an expert on sensors. I think it's just reacting to the, the amount of ethanol molecules that are in the sample compared to what compared to nothing. It's just simply, there's some kind of, as I understand it, some either some chemical reaction or it's measuring the change in the, in the resistance across the sensor, I guess, depending on what kind of sensor you use. But I guess I would go back to Mr. Hawthorne. For example, he was asked on direct by plaintiff, how claim 14 worked. He didn't, wasn't how the patent works, how claim 14 works. And he says that the sensor measures the ethanol. We then compare that to a table where we have stored references so that we can, and I'm not quoting exactly, but we can then take that voltage out of the table and give you an estimation of the percentage of alcohol that caused that voltage. That's what Hawthorne,  you know, an officer of the plaintiff co-inventor on the patent and expert. He says, that's what claim 14 is doing later. He's asked, well, how is claim 14 different from the example of the prior art? And again, he says that you have to have this characterization or other transformation to take the voltage into a, a tack number or a percent of alcohol. So he's asked. So in your view, simply putting a sensor on the patent wouldn't be or on the prior art patent wouldn't be the same as claim 14, because there is no characterization or algorithm or other things to transform the voltage into. Why is all of this relevant? Why are you reading all this Hawthorne stuff? It's all extrinsic evidence. We're construing claims. Yeah. But, but this gives you an understanding when someone in the art says a percentage of alcohol, what that means to those of skill in the art. And I think it's entirely consistent with the specification. The specification talks about when it talks about arriving at a percentage, it doesn't say the voltage is the percentage. It talks about taking the voltage. I think there's any, I mean, I don't understand why it still can't be equivalent under the doctrine of equivalence. You maybe Mr. Hawthorne's testimony is very persuasive on literal infringement, but I still don't understand why you couldn't have DOE equivalence. Well, again, at the summary judgment hearing, they, the only evidence of doctrine of equivalence that they put on was Mr. Hawthorne's testimony saying how easy it was to convert from one to the other. But he admitted that we couldn't convert the accused product. Couldn't do that kind of conversion because we didn't have a table where we didn't have this formula. We didn't know this special conversion factor. He admitted that he had to use his own device. Adding a step to the claim doesn't necessarily create equivalence. I'm sorry? Adding a step to the claim doesn't necessarily create equivalence. Equivalence arises from, from an exchange, from an identity, not from adding a step. Tell us a little bit about step E, transmitting each of said measurements. We haven't heard any commentary about that. Yes. Step E, and this kind of goes to, um, to a, uh, to an argument that was made, I think really regarding, regarding steps, um, um, D and F that the claim 14 essentially has two loops of, um, and those are defined by steps D and F. So you have this loop D, which requires you to repeat steps B and C until some predetermined amount of time expires. You then go to step E and you transmit all of the results that you stored from step C. And then you go to this bigger loop F, which then repeats the whole cycle over again. And I think the, the argument here is that that's not what the accused device does. It, it, you know, of course we, we say we don't do step C, but it stores some result. It then reports the result. And then it, then it repeats the whole process. Essentially we don't have two loops. We have one measurement result. Excuse me? It doesn't transmit each measurement result. Correct. Doesn't transmit each measurement. Measurement drops one off, like this, and then it drops one off and it adds another one. Yes, I believe so. Right. Yes. But does your, Is there a difference between the measurement and measurement result? No, the result of a measurement. No, it's the same thing. Well, you're making a measurement. Wait, wait. Claim C says measuring a percentage of alcohol and then storing A, not said, storing A measurement result. Why couldn't the result be thumbs up, thumbs down? DUI, DWI, the measurement result that is stored and then later transmitted, doesn't have to be the same potentially numerical calculation of percentage, right? It could be yes or no. Alcohol here, no alcohol here. It could be anything. The result could be a converted something else. Like it could be your F out. I don't think that Mr. Zettel, for example, who was their claim construction infringement expert, he said that that's, he didn't say that that's how a person of ordinary skill in the art would understand it. No, no. They clearly argued measuring a percentage of alcohol and the measurement result do not have to have be the same thing. They pointed out the said A thing. I didn't make that up on my own. So, or maybe I did. No, I didn't. I didn't make it up on my own. So, I mean, clearly the measurement result and the percentage of alcohol could be two different things. Maybe they, maybe they can, and maybe we are storing a measurement result, but we're still not measuring a percentage of alcohol. But I guess let's go back to E. You are transmitting each minute. If the measurement result was F out, you transmit each F out. Don't you? Yes. But then the, our argument is we don't do step D. Because we don't repeat that. You don't come up with multiple F out. Exactly. We have one loop. We take them. We store a measurement result. And then we skip to E. We transmit that result. And then we repeat the process. That might be an equivalent of what's claimed. Well, no, because I think it would totally eliminate step D. I think it would vitiate D. Exactly. Well, here's my question though. D says repeat steps B and C until a predetermined amount of time. If I set the predetermined amount of time to be so low, such that there couldn't be that repetition, wouldn't step D still be satisfied? Well, you haven't repeated it. Well, because I'm only repeating it for a predetermined amount of time. But a predetermined amount of time is a set number, right? If I set it at .1 second, it doesn't have time to repeat. Well, then I would submit that you're not repeating it. Well, it doesn't say repeat it. It doesn't just say repeat B and C, right? It says repeat B and C until a predetermined amount of time expires. And it doesn't put any qualification anywhere on the patent about how long that period of time must be. It doesn't say the predetermined period of time must be long enough to allow at least one full repetition cycle. Right. I see what you're saying. Then I think the argument though is that... Well, again, I guess I would go back to it's not repeating. Again, it's like the step doesn't exist at all. I understand. Let me ask one more quick question before your time. Well, I feel bad we're dragging you over, but do these steps have to be performed in order? Because the great brief alluded to the fact that it's possible that these steps don't have to be performed in order. The lower court made no finding. Of course, our general rule is method steps have to be performed in order as a general rule, but I didn't see any briefing below or here on that. And if we were to switch the order between D and E, then your argument about we don't calculate multiple F valves wouldn't be a non... It still wouldn't exist as a non-infringement argument. And so I'm wondering, do we have an adequate amount of information at this stage to know whether these claims steps are bound to have to be performed in order? I think so. I think they do have to be performed in order, but even if you switch them around, I think though that you'd end up construing D and F to be the exact same thing. That there's no difference in those... In those steps. I misstated one thing. Our general rule is that they don't have to be performed in order. I'm very sorry. I mis... My clerk just pointed out to me, you just missed out. I got excited for a second. You got excited, right? I just changed our general rule. I can't do that. Precedent binds me. So our general rule is that they don't have to be performed in order. So why can't they switch D and E? Because I think though that D and... The two loops that are defined, one in D and one in F can't be the exact same, you know, loop. The patent clearly calls for two loops and to say, well, let's switch D and E around and we'll make D and F one big loop. I think just reads that one limitation entirely out of the claim. Anything further? Thank you. Thank you. Thank you, Mr. Fleming. We'll give Mr. Martin three minutes. Thank you. To rebut. I first wanted to address the issue that Mr. Fleming raised regarding experts. As this court has said repeatedly, claim construction testimony of experts and inventors is to be treated with the utmost caution and that a expert's or an inventor's testimony concerning their subjective opinion as to the scope of the claims really isn't very relevant. And getting back to the points... Can you start with E? You don't have much time and you didn't get to address that on your initial presentation. So why doesn't E present an alternative ground for affirming the claim that they don't repeat B and C before transmitting or they don't transmit each, depending on what we're talking about? Well, there's been no determination. First of all, there's been no determination. This is an alternative ground for affirming. But as the court pointed out previously, unless the steps of a method actually recite an order not required, the court's not, or the patent isn't, that isn't a required limitation. Well, the order seems to be pretty clear. There's a C and then D says repeating B and C. So obviously B and C precede D. Correct. They precede D in the patent, but they're just transmitting each measurement result. And then it doesn't read F out at all because there are multiple predetermined... F just contemplates multiple predetermined amounts of time. You've got B and C. Okay, wait. I'm confused. So if you're going to suggest to me the way that E would still be satisfied is if we switch the order of D and E, that you would have a transmission of each before repeating. Correct? Repeating steps D and E until a predetermined amount of time expires. The predetermined amount of time that's contemplated, at least in the specifications in the patent, is 24 hours. And then transmitting each of the said measurement results and each of said... There are multiple measurement results and each is being transmitted. Well, no. If the measurement result is FVALC, then each is not being transmitted. Because... Or I shouldn't say there's no repetition before each is transmitted. And I don't think there's any requirement in the patent that there be repetition. You didn't appeal that. District court held... D and E required at least one repetition and you did not appeal that to us. The repetition... Step D repetition, repeating steps B and C until a predetermined amount of time expires. The district court explicitly held that required at least one repetition of steps B and C. And there's... The only evidence before the court was on a non-infringement. The court, there was no plain construction arguments on steps D and E and F before the court. The court just simply found that there was no infringement. No, the court held explicitly that the repeating required it to perform step B and C at least one time. And they perform steps B and C at least one time. No, repeating it at least one time. They repeat it every 15 minutes. No, they don't repeat it every 15 minutes prior to transmitting. But I don't believe that there's any requirement in the patent that it be Well, so then if I switch the order of step D and E, which is your argument as I understand it, that transmission can happen first, then it's repeated, then you have collapsed. So then it would now go, the patent would read A, B, C, E, D, F. Well, D and F would sort of be the exact same thing, wouldn't it? No, they wouldn't. It wouldn't be, Your Honor, for the simple reason that F contemplates multiple predetermined amounts of time. It's continuous. That's why it would not render F superfluous. I don't follow. F contemplates repeating steps B and E, right? That contemplates multiple predetermined amounts of time. Well, it says repeating steps B through E. But if you've transmitted before you've done the repetition that would occur in D, how would you, I mean, how would the repetition that occurs in D be any different than the repetition that occurs in F? Because there would be multiple predetermined amounts of time. Let's say that we're talking about a 24-hour period as the predetermined amount of time. You would repeat every 15 minutes during that 24-hour period. You would be transmitting each of the measurement results during that 24-hour period. And then F, you'd have a new 24-hour period where you'd do the same thing. Do you have a final thought, Mr.? I just wanted to address the issues on equivalence. The one, both Mr. Zettel and Mr. Hawthorne testified that the HAZ device achieves the same result as the method claimed in Claim 14 of the patent. And Mr. Zettel at page 959 of the joint appendix and Mr. Hawthorne at page 940 and 2116 to 2118 of the joint appendix. And that testimony, that expert testimony was totally disregarded by the district court judge regarding the result in his granting summary judgment to the defendants finding that no reasonable jury . . . Is there another final point? That is it, Your Honor. Okay. Thank you, Mr. Martin. We will soberly assess the case.